1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7
8
9
10
11
12

BALUMA, S.A., d/b/a ENJOY PUNTA DEL
ESTE & CASINO,

               Plaintiff\Counterdefendant,

     v.

VLADISLOV DAVYDOV,

              Defendant\Counterclaimant.

Case No. 2:20-cv-001552-KJD-NJK

ORDER

13
14

      Presently before the Court is Plaintiff's Motion for Summary Judgment (#24). Defendant filed a response in opposition (#26) to which Plaintiff replied (#27).

15

I. Background

16
17
18
19
20
21
22
23
24
25
26
27
28

      Plaintiff, a gaming corporation in Uruguay associated with Caesars Entertainment, brings this action to recover for breach of contract based on gaming markers signed by Defendant. On or about November 15, 2018, Defendant Davydov submitted a credit application (the "Credit Application") to Plaintiff Baluma seeking to obtain credit from Baluma. In connection with the Credit Application, Davydov completed a separate document entitled "Casino Credit Fact Sheet, Application and Agreement" (the "Fact Sheet") which set forth certain terms and conditions associated with the line of credit sought by Davydov. As a result, Davydov was granted marker signing privileges. Davydov, on a later visit, drew down the full amount of his line of credit, $100,000.00. In connection with his request, Davydov admits that he executed an agreement known as the Draw Request, dated January 21, 2020. The Draw Request contained Defendant's promise to repay $100,000.00 acknowledging that the document was a credit instrument that created an obligation to pay the full amount, "identical to a personal check[.]" See Plaintiff's Motion for Summary Judgment ("MSJ"), Doc. No. 24, p. 4, l. 1-15.

After agreeing to the terms of the Draw Request, Davydov signed four (4) separate markers reflecting the total principal amount of indebtedness of $100,000 (the "Markers"). Baluma has demonstrated, and Davydov has admitted (through his unwithdrawn Admissions), that the Markers expressly contemplated that Davydov would pay the amount reflected therein, plus interest, on or before the dates set forth in each Marker. Baluma has established, and Davydov has admitted, that he accepted $100,000 from the Casino and utilized the same gambling in the Casino.

Despite Davydov's express obligation to repay the entire amount due under the Markers, Davydov has admitted that he did not repay the amounts reflected by the Markers prior to leaving the Casino or by the dates contemplated by the Markers. See MSJ, Ex. 2, Resp. to Admissions, Req. No. 18; Ex. 5, Davydov Dep. Tr., 29:17-23; Comp., ECF No. 1, ¶¶ 18-19; Ans., ECF No. 19, ¶ 18-19 (stating, in relevant part, "Defendant admits he did not personally repay the markers[.]"), ¶ 23 (stating, in relevant part, "Defendant admits he did not personally subsequently repay the markers[.]"

Plaintiff then filed the present action asserting claims for breach of contract, breach of the covenant of good faith and fair dealing and unjust enrichment.[1] Defendant filed a counterclaim asserting claims for setoff, recoupment and breach of contract.

II. Standard

Summary judgment is appropriate when the pleadings, discovery responses, and affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fishbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the initial burden of showing that there are no genuine issues of

---

[1] The Court, finding that no genuine issue of material fact prevents it from granting Plaintiff's motion for summary judgment on breach of contract, dismisses Plaintiff's claim for unjust enrichment as moot. The general rule being that unjust enrichment claims may not be based on express written contracts. Leasepartners Corp v. Robert L. Brooks Trust, 942 P.2d 182, 187 (Nev. 1997).

material fact for trial. It can do this by: (1) presenting evidence to negate an essential element of the nonmoving party's case; or (2) demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 323–325.

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T. W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Bank of Am. v. Orr, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). It "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in its favor. Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–249 (1986).

III. Plaintiff's Motion for Summary Judgment on Its Claims

A. Breach of Contract

To prevail on its breach of contract claim against Davydov, Baluma must prove: "(1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." See Laguerre v. Nevada Sys. of Higher Educ., 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011). After establishing the required elements, summary judgment is appropriate in a marker collection case such as this. See NRS 463.368(1) et seq.; see also Morales v. Aria Resort & Casino, LLC, 995 F. Supp. 2d 1176, 1180-1181 (D. Nev. 2014) (finding credit applications and markers are contracts, under which the signing party has a duty to pay.); see also Desert Palace, Inc. v. Michael, No. 2:16-cv-0462-JAD-GWF, 2017 U.S. Dist. LEXIS 19202, at *8 (D. Nev. Feb. 9, 2017) (finding the casino could bring a civil action against the patron to recover the amount of the debt without presenting the markers to the

designated banks for payment).

Here, there is no genuine issue that must be resolved by a fact finder. It is undisputed that Davydov entered into a series of valid and existing contracts for a loan in the amount of $100,000—namely, the Credit Application, the Fact Sheet, Draw Request, and Markers (collectively, the "Contract").

There is no dispute as to repayment obligations under the Contract as reflected by its plain language. May v. Anderson, 672 P.3d 1254, 1257 (Nev. 2005) (under Nevada law, "Basic principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration"). Davydov confirmed that he executed each of those documents with the intent of receiving a $100,000 line of credit with which to gamble at Baluma's casino, confirming that there was an acceptance and meeting of the minds with respect to parties' Contract. Ex. 2, Resp. to Admissions, No. 15; see also Ans., ECF No. 19, ¶ 16 (admitting that he signed the Markers and stating "the terms of the [Markers] speak for themselves"), Davydov further confirmed the parties' meeting of the minds during his deposition when he admitted that he filled out the forms for the purpose of obtaining credit in the amount of $100,000.00.

Under the terms of the Contract, Baluma was obligated to provide Davydov with $100,000 for his use within the Casino in exchange for Davydov's promise to repay the funds loaned to him. There is no dispute that the Casino fulfilled all obligations under the agreement and provided Davydov with $100,000 which he then gambled in the Casino, which Davydov admitted in his deposition.

It is also undisputed that Davydov breached the Contract. That is, under the terms of the Credit Application, Fact Sheet, Draw Request and Markers, Davydov was contractually obligated to repay the amounts loaned thereunder no later than the date set forth in each Marker.

Davydov executed the following Markers:

(1) Davydov executed Marker number MK10312471 in the amount of $30,000.00 to be paid in full, plus interest, on or before April 21, 2020.

(2) Davydov executed Marker number MK10312677 in the amount of $20,000.00 to be paid in full, plus interest, on or before April 22, 2020.

1     (3) Davydov executed Marker number MK10312693 in the amount of $10,000.00 to be

2     paid in full, plus interest, on or before April 22, 2020.

3     (4) Davydov executed Marker number MK10312698 in the amount of $40,000.00 to be

4     paid in full, plus interest, on or before April 22, 2020.

5     See Ans, ECF No. 19, ¶¶ 11-15 (admitting he signed the agreements at issue); MSJ, Ex. 2, Resp.

6     to Admissions, Req. Nos. 10-14; Ex. 5, Davydov Dep. Tr., 40:2-15; Ex. 6, Bayeto Decl., ¶¶ 7-10.

7         It is also undisputed that Davydov did not repay the $100,000 he received from Baluma,

8     i.e., that he breached the terms of the Contract. Ans, ECF No. 19, ¶ 18 ("Defendant admits he did

9     not personally repay the markers[.]"), ¶ 19 ("Defendant admits he did not personally

10    subsequently repay the markers[.]"); MSJ Ex. 2, Resp. to Admissions, Req. No. 18 ("Admit that

11    I have not repaid any amount under the Casino Markers, but deny that the funds as contained in

12    the Casino Markers were a loan to me."); Ex. 5, Davydov Dep. Tr., 29:17-25; Ex. 6, Bayeto

13    Decl., ¶¶ 14-15.

14        Finally, there is no dispute that Plaintiff performed under the terms of the Contract by

15    providing Davydov $100,000 to gamble in the Casino under his line of credit. After Plaintiff's

16    performance, the terms of the Contract dictate that Davydov is contractually obligated to repay

17    the principal amount reflected in the Markers plus interest. Davydov has admittedly not repaid

18    any of the money loaned to him under the Markers. Therefore, Baluma has been directly

19    damaged in the amount of $100,000 plus interest and attorneys' fees.

20        Given that Plaintiff has set forth uncontroverted evidence to establish that: (a) there exists

21    a valid and existing contract between Baluma and Davydov; (b) Baluma performed all material

22    terms of the agreement; (c) Davydov breached the agreement by failing and/or refusing to repay

23    the amounts owed; and (d) Baluma has been directly damaged as a result of Davydov's breach,

24    the Court grants summary judgment in Plaintiff's favor on its first claim for breach of contract.

25        B. Breach of the Covenant of Good Faith and Fair Dealing

26        To establish a claim for breach of the implied covenant of good faith and fair dealing, a

27    party must show: (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty

28    of good faith to plaintiff; (3) defendant breached that duty by performing in a manner that was

1 unfair or unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were

2 denied. <u>Hilton Hotels Corp. v. Butch Lewis Prods., Inc.</u>, 808 P.2d 919, 922 (Nev. 1991). Where a

3 party to a contract acts deliberately to contravene the intention and spirit of the contract, that

4 party may be found liable for breach of the implied covenant of good faith and fair dealing. <u>Id.</u> at

5 923.

6       Here, Davydov entered into a Contract with Baluma executing the Markers knowing that

7 the intent of the documents constituting the Contract was the provision of money to Davydov for

8 him to gamble, which amounts were to be repaid to the Casino. Despite his knowledge that all

9 amounts provided to him under the Markers were to be repaid, Davydov left the Casino without

10 repaying the same and further allowed the deadline for repayment set forth therein to lapse

11 without even attempting to make a payment—a fact readily admitted by Davydov.

12       Thus, as admitted through his own testimony, pleadings, and discovery responses,

13 Davydov acted in a manner intended to contravene the spirit of the agreement between the

14 parties—namely that he accepted funds under the Markers and failed to repay the same in

15 accordance with the terms of the Markers.[2] Therefore, the Court grants summary in Plaintiff's

16 favor on its second cause of action for breach of the covenant of good faith and fair dealing.[3]

17 <u>IV. Plaintiff's Motion for Summary Judgment on Defendant's Affirmative Defenses and</u>

18 <u>Counterclaims</u>

19       All of Defendant\Counterclaimant's affirmative defenses and claims for relief arise

20 exclusively out of an "Independent Agent Agreement" to which Davydov is not a party.

21 Davydov alleges that Johnny Chun-Yu Chow entered into this agreement with Baluma under

22 which Chow would be paid commissions based on money spent in the casino by players (such as

23 Davydov) that Chow brought to the Casino. However, Davydov first disclosed this contract on

24

25     [2] To the extent that Defendant argues that his testimony and affidavit raise genuine issues of material fact,
the Court disagrees. "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition

26 testimony." <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991). Likewise, "[a] party cannot create a
genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts." <u>Block</u>

27 <u>v. City of Los Angeles</u>, 253 F.3d 410, 419 n. 2 (9th Cir. 2001) (rejecting a declaration that contradicted stipulated
facts). Here, Defendant's formal Admissions have never been withdrawn.

28     [3] The Court notes that Plaintiff has not suffered any damage additional to that accrued in its breach of contract
claim.

1    March 1, 2021, twelve (12) days after the close of discovery in this case, attached as an exhibit to

2    his Reply Memorandum in Support of Motion to Extend Discovery Deadline. (ECF No. 21 at pp.

3    8-21).[4] Given that Davydov failed to produce the Independent Agent Agreement before the

4    discovery cut-off, Davydov is precluded from introducing the same to support any counterclaim

5    against Baluma. See FED. R. CIV. P. 37(c) ("If a party fails to provide information or identify a

6    witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

7    witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

8    substantially justified or is harmless.").  Accordingly, the Court refuses to consider the contract

9    pursuant to Rule 26. Without the contract, the Court finds no basis for the alleged affirmative

10   defenses and breach of contract claims. However, even if the document was timely, or its

11   consideration was considered harmless, the Court would still grant summary judgment to

12   Plaintiff\Counterdefendant on Davydov's counterclaims\affirmative defenses.

13        A. Affirmative Defenses of Setoff and Recoupment

14        Davydov's first and second counterclaims allege entitlement to Setoff and Recoupment.

15   In each claim, Davydov alleges to have been an invited guest of Chow and that on previous trips

16   (a) Davydov had been credited for certain expenses and (b) not been held responsible for the

17   repayment of lines of credit allegedly issued to Davydov. See Ans., ECF No. 19, 6:21-8:5.

18   Davydov further alleges that he has two categories of valid and enforceable debts against the

19   Casino. First Davydov alleges he holds a valid debt against the Casino in the form of uncredited

20   expenses the Casino agreed to cover. Id. Second, Davydov alleges he holds a valid debt against

21   the Casino "equivalent to the amount of the credit line Plaintiff agreed to waive and/or deem paid

22   as part of its payments to Mr. Chow of commissions…" Id. at 7:3-20.

23        Setoff and recoupment are equitable defenses under which a defendant may seek to offset

24   sums owing to the plaintiff against sums owing from the plaintiff to the defendant. See Newbery

25   Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1398 (9th Cir. 2006) (citing Citizens Bank of

26   Maryland v. Strumpf, 516 U.S. 16, 18 (1995). "The right of setoff is permissive, not mandatory;

27

28        [4] The motion to extend the discovery deadline was denied without prejudice by the magistrate. Defendant
     could have filed objections to the order or could have renewed its motion to extend the discovery deadline. He did
     neither. Therefore, disclosure of the contract was untimely.

its application 'rests in the discretion of [the] court, which exercises such discretion under the general principles of [equity].' [] 'The burden of proving an enforceable right of setoff rests with the party asserting the right.'" Id. at 1399. The doctrine of setoff is intended to avoid "the absurdity of making A pay B when B owes A." Citizens Bank of Maryland, 516 U.S. at 18. Recoupment, on the other hand, "is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." Newbery Corp., 95 F.3d at 1399.

Even if the Court were to consider the Independent Agent Agreement, Davydov has not produced any evidence to establish a right to setoff or recoupment. The Independent Agent Agreement is devoid of any reference to Davydov or any rights he obtains by way of that agreement. See MSJ, Ex. 8, Independent Agent Agreement. The agreement between Baluma and non-party Chow is devoid of any clause or representation that establishes any debt in Davydov's favor against Baluma for alleged uncredited expenses. Nor has Davydov produced any evidence in the case demonstrating amounts that he allegedly believes he is entitled to under his claims. Davydov has not met his burden to establish that genuine issues of fact must be resolved by a fact finder.

Regarding Davydov's assertion that he holds a valid debt against Baluma "equivalent to the amount of the credit line Plaintiff agreed to waive and/or deem paid as part of its payments to Mr. Chow of commissions…", Davydov's reliance on the Independent Agent Agreement is again misplaced. With respect to the commissions to be paid to Chow (again, not Davydov), the Independent Agent Agreement provides:

> No compensation will be paid until all credit instruments have been paid in full by the applicable customer. If any credit balances are turned over to collections or a settlement becomes necessary, any commissions related thereto shall be forfeited unless expressly authorized in writing by an office of the Company or Casino.

Ex. 8, Independent Agent Agreement, p. 5. Thus, the Independent Agent Agreement itself provides that in an instance such as this, where Davydov has admittedly not repaid all amounts due under the credit instrument at issue (i.e. the Markers) Chow is not entitled to any commission whatsoever. It follows that Davydov is not entitled to any sort of setoff or

1   recoupment. Further, Davydov has not provided this Court with evidence to the contrary. <u>See</u>

2   <u>Newbery Corp.</u>, 95 F.3d at 1398. In other words, there would be no commission owed to Chow

3   for Davydov's gambling upon which Davydov could claim an offset because Davydov failed to

4   repay the amount due under the Markers. Nor has he produced any evidence purporting to

5   represent or support any commissions otherwise owed to Chow for which he believes he may be

6   entitled to credit.[5] As the Independent Agent Agreement upon which Davydov's Counterclaim

7   rests does not afford him any right on its face and because Davydov has not presented any

8   evidence that he would be entitled to a credit with respect to the non-party's commissions, the

9   Court grants summary judgment in Baluma's favor as to Davydov's First and Second

10  Counterclaims for Setoff and Recoupment.

11      B. Contract Counterclaims

12      Davydov's Third and Fourth Counterclaims allege breach of contract and breach of the

13  implied covenant of good faith and fair dealing arising out of the same Independent Agent

14  Agreement. In claiming rights under the Independent Agent Agreement, Davydov claims that he

15  "is an intended third-party beneficiary of the Independent Agent Agreement." Ans., ECF No. 19,

16  8:17-23. However, Davydov holds no third-party rights under the Independent Agent Agreement,

17  on its face or as a matter of law, and cannot establish a claim for breach of contract or breach of

18  the implied covenant of good faith and fair dealing.

19      To establish a claim for breach of contract, Davydov must establish "(1) formation of a

20  valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by

21  the defendant; and (4) damages." <u>See</u> <u>Laguerre</u>, 837 F. Supp. 2d at 1180. To obtain status as a

22  third party beneficiary, "there must clearly appear a promissory intent to benefit the third party,

23  and ultimately, it must be shown that the third party's reliance thereon is foreseeable." <u>Lipshie v.</u>

24  <u>Tracy Inv. Co.</u>, 566 P.2d 819, 824-25 (1977). For one to be considered a third party beneficiary,

25  _____

26      [5] Defendant has attached and made reference to some spreadsheets that have supposedly been produced by
    Plaintiff in this action. However, the spreadsheets, in Spanish, contain no translation. They are not Bates stamped, so

27  it is unclear who produced the documents and in which action. Further, Defendant has not made clear how these apply
    to the debt he accrued in or about January 2020. Defendant is required to produce admissible evidence raising genuine

28  issues of material fact. Defendant has failed to even meet the standards for admissibility. It is unclear if these are
    relevant or reliable documents. Further, they require untenable amounts of speculation on the part of the Court to
    determine what they even contain.

1   the underlying agreement must be made for that party's benefit. See Olson v. Iacometti, 533 P.2d

2   1360, 1363 (1975). "The fact that he might incidentally benefit by the performance of the

3   agreement is insufficient." Id. "Whether an individual is an intended third-party beneficiary turns

4   on the parties' intent, 'gleaned from reading the contract as a while in light of circumstance under

5   which it is entered" Wright v. Incline Village Gen. Improvement Distr., 597 F. Supp. 2d 1191,

6   1205 (D. Nev. 2009).

7        Here, the Independent Agent Agreement makes absolutely no reference to Davydov nor

8   does the Independent Agent Agreement provide that Chow's commissions are to be used first to

9   pay back amounts owed by any applicable player. Indeed, the Independent Agent Agreement

10   provides quite to the contrary in that it expressly outlines that Chow would not be paid

11   commissions "until all credit instruments have been paid in full by the applicable customer." Ex.

12   8, Independent Agent Agreement, p. 5. Further, nothing in the Independent Agent Agreement

13   obligates Chow to pay down debts owed to Baluma by any particular party by utilizing his

14   commissions, let alone specifically Davydov. At best, Davydov incidentally benefitted from the

15   Independent Agent Agreement which is insufficient to establish third-party beneficiary status.

16   See Olson, 533 P.3d at 1363.

17        Ultimately, the evidence in the record, even considering the Independent Agent

18   Agreement, demonstrates unequivocally that Davydov is not entitled to bring claims for Breach

19   of Contract or Breach of the Implied Covenant of Good Faith and Fair Dealing. Given the

20   complete absence of any evidence to support Davydov's contract-based counterclaims, the Court

21   grants summary judgment in Baluma's favor on the contract counterclaims.

22   V. Damages

23        "[C]ontract damages are prospective in nature and are intended to place the nonbreaching

24   party in as good a position as if the contract had been performed." Colorado Env'ts, Inc. v.

25   Valley Grading Corp., 779 P.2d 80, 84 (Nev. 1989). Based on this record, the Court finds that

26   Baluma has met its obligation on summary judgment and that Davydov has not presented

27   evidence to create a triable issue. Therefore, the Court grants Baluma's motion on its breach-of-

28   contract claim and awards damages in the amount of $100,000.00.

1

2 VI. Conclusion

3       Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment

4 (#24) is **GRANTED**;

5       IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** in the

6 amount of $100,000.00 in favor of Plaintiff/Counterdefendant and against

7 Defendant/Counterclaimant.

8 Dated this 24th day of March, 2022.

9

10                         Kent J. Dawson

11                         United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28